**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

UNITED STATES OF AMERICA,           Case No. 9:25-tp-80032-ARTAU

       Plaintiff,                (Transferred from D.N.J.,
                                Case No. 2:10-cr-00471-SDW)

v.

NEVIN SHAPIRO,

       Defendant.

_____

**DEFENDANT'S MOTION FOR EARLY TERMINATION**
**OF SUPERVISED RELEASE**

Defendant, **NEVIN SHAPIRO**, by and through undersigned counsel, respectfully moves

this Honorable Court, pursuant to 18 U.S.C. § 3583(e)(1) and Federal Rule of Criminal Procedure

32.1(c)(2)(B), for entry of an Order terminating his term of supervised release. In support, Mr.

Shapiro states as follows:

**I.     INTRODUCTION AND PROCEDURAL BACKGROUND**

1.     On June 14, 2011, the United States District Court for the District of New Jersey (the

Honorable Susan D. Wigenton, U.S.D.J.) sentenced Mr. Shapiro to 240 months'

imprisonment, three (3) years of supervised release on each count to run concurrently,

$82,657,362.29 in restitution, and a $200 special assessment, following his plea of guilty

to Count Two (Securities Fraud, 15 U.S.C. §§ 78j(b) and 78ff; 17 C.F.R. § 240.10b-5) and

Count Five (Engaging in Monetary Transactions in Property Derived from Specified

Unlawful Activity, 18 U.S.C. § 1957). *United States v. Shapiro*, No. 2:10-cr-00471-SDW

(D.N.J. June 14, 2011) (Judgment, ECF No. 30). The conviction was affirmed on direct

appeal. *United States v. Shapiro*, 505 F. App'x 131 (3d Cir. 2012).

2.    Mr. Shapiro was released from the custody of the Federal Bureau of Prisons on June 11, 2020. On December 12, 2024, the President of the United States granted Mr. Shapiro Executive Clemency commuting the remainder of his sentence of imprisonment, which was scheduled to expire on December 22, 2024. *See* Executive Grant of Clemency, ECF No. 61 (D.N.J. Dec. 20, 2024). The grant of clemency did not disturb the term of supervised release imposed at sentencing. Mr. Shapiro's three-year term of supervised release commenced on December 20, 2024, and is currently scheduled to expire on December 19, 2027.

3.    On December 11, 2025, Judge Wigenton entered an Order transferring jurisdiction over Mr. Shapiro's supervised release to this Court pursuant to 18 U.S.C. § 3605. On December 17, 2025, this Court accepted the transfer of jurisdiction, and the matter was assigned the above-captioned case number. *See* Transfer of Jurisdiction (Form Prob. 22), ECF No. 1 (S.D. Fla. Dec. 18, 2025).

4.    Mr. Shapiro has now completed in excess of seventeen (17) months of supervised release without incident, satisfying the one-year statutory eligibility threshold for early termination under 18 U.S.C. § 3583(e)(1). The United States Probation Office and the United States Attorney's Office have been consulted regarding this Motion in accordance with the Court's customary practice and Local Rule 88.9 of the Local Rules of the Southern District of Florida.

## II.    LEGAL STANDARD

5.    Title 18, United States Code, Section 3583(e)(1) authorizes a district court, after considering the sentencing factors enumerated in 18 U.S.C. § 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7), to "terminate a term of supervised

release and discharge the defendant released at any time after the expiration of one year of supervised release . . . if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice." 18 U.S.C. § 3583(e)(1).

6.      The Eleventh Circuit has held that a district court enjoys broad discretion in evaluating motions for early termination, and the decision to grant or deny such a motion is reviewed only for abuse of discretion. *See United States v. Johnson*, 877 F.3d 993, 997 (11th Cir. 2017); *United States v. Mathis-Gardner*, 783 F.3d 1286, 1288 (D.C. Cir. 2015) (Garland, C.J.). Although the statute contemplates the existence of "new or unforeseen circumstances" in some cases, the Eleventh Circuit has not adopted that as a prerequisite, and "compliance with the conditions of supervised release, including refraining from engaging in criminal activity," coupled with sustained rehabilitation, may suffice to warrant early termination. *See United States v. Perry*, 397 F. App'x 521, 522 (11th Cir. 2010).

7.      Federal Rule of Criminal Procedure 32.1(c)(2)(B) provides that a hearing is not required where the relief sought is a modification favorable to the defendant and the Government does not object. The Sentencing Commission has likewise emphasized that supervised release is intended to "facilitate the integration of [defendants] into the community, while providing the supervision designed to limit further criminal conduct," and not to extend the punitive component of a sentence. U.S.S.G. § 5D1.1, cmt. background (2024).

III.    **ARGUMENT — THE § 3553(a) FACTORS WARRANT EARLY TERMINATION**

Each of the statutory factors that this Court must consider under 18 U.S.C. § 3583(e)(1) supports termination of supervised release. Mr. Shapiro's post-release conduct evidences durable rehabilitation, complete compliance with the terms of supervision, an active and lawful livelihood,

ongoing restitution payments, and a demonstrable commitment to deterrence and public benefit through voluntary educational outreach.

### A. Nature and Circumstances of the Offense; History and Characteristics of the Defendant — 18 U.S.C. § 3553(a)(1).

Mr. Shapiro does not minimize the seriousness of his offense conduct. He has, however, engaged in a profound and sustained transformation since his release. He has fully complied with all standard and special conditions of supervised release without incident. He has reconnected with his faith, maintains a daily prayer practice, and works closely with his local rabbi, Rabbi Sholom Korf of Chabad of Delray Beach. He has assumed daily caregiving responsibilities for his father following a stroke — an experience he credits with reshaping his priorities toward responsibility, empathy, and service.

*The Lead Investigative Agent's Assessment.* The most probative evidence of Mr. Shapiro's transformation comes from the law enforcement professional with the deepest familiarity with the offense conduct: Gregory M. Yankow, the retired Special Agent of the Federal Bureau of Investigation who served as the lead investigative agent on the underlying federal investigation. Following his own retirement and an extended period of personal observation of Mr. Shapiro's reintegration, Special Agent Yankow has concluded — in his professional judgment as a former federal law enforcement officer — that Mr. Shapiro does not present a risk to the community, that continued supervision is no longer necessary to serve the purposes of supervised release, and that Mr. Shapiro's post-release conduct reflects "durable, internalized change" rather than temporary compliance. *See* Letter of Gregory M. Yankow, Retired Special Agent, Federal Bureau of Investigation (Jan. 30, 2026), attached as **Exhibit A**.

Rabbi Jack Weiss of the Tzedek Association — a national criminal-justice reform organization that has worked extensively with the Bureau of Prisons, the Department of Justice,

and members of Congress on First Step Act implementation — has known Mr. Shapiro since the early years of his incarceration. Rabbi Weiss attests to a transformation he describes as "extraordinary" — from a defendant who carried grievance and a sense of victimization, to an individual whose life is now grounded in humility, daily religious practice, and a singular commitment to contributing positively. *See* Letter of Rabbi Jack Weiss, Tzedek Association (Feb. 2, 2026), attached as **Exhibit B**.

### B.       The Need for Adequate Deterrence — 18 U.S.C. § 3553(a)(2)(B).

Mr. Shapiro has voluntarily undertaken an extensive program of educational outreach that fully realizes the deterrent purposes of his sentence. He has lectured to undergraduate and graduate students at Fordham University, Clemson University, and Florida Atlantic University regarding the mechanics of financial-statement fraud, the situational pressures that precede unethical decisions, and the cascading personal and institutional consequences that follow.

Dr. Timothy P. Hedley, Ph.D., CPA, CFF, CFE — the recently retired global leader of Fraud Risk Management Services at KPMG LLP and longtime member of the accounting faculty at Fordham University's Gabelli School of Business — describes Mr. Shapiro as among the most impactful guest lecturers he has hosted in over thirty years of teaching, delivering "a powerful message about the importance of judgment and business risk" grounded in remorse, contrition, and accountability. *See* Letter of Dr. Timothy P. Hedley, Ph.D. (Sept. 25, 2024), attached as **Exhibit C**.

Dr. Phebe Davis-Culler, Ph.D., MPAcc Program Coordinator and Clinical Associate Professor of Accounting at Clemson University's Wilbur O. and Ann Powers College of Business — School of Accountancy, similarly attests that Mr. Shapiro's October 2025 lecture on financial-statement fraud was characterized by "honesty and accountability," and produced "a direct and

positive impact on [students'] learning and on their future decision-making as aspiring professionals." *See* Letter of Phebe Davis-Culler, Ph.D., Clemson University (Oct. 2025), attached as **Exhibit D**.

Patrick W. Lawlor, Esq., a Florida Bar Board-Certified Civil Trial Attorney and Adjunct Professor of Sports Law in the M.B.A. Sports Management Program at Florida Atlantic University, similarly devoted an entire class session to Mr. Shapiro and reports that the engagement was "profound, clear and educational." *See* Letter of Patrick W. Lawlor, Esq. (Jan. 29, 2026), attached as **Exhibit E**.

This voluntary educational work — undertaken at no compensation to Mr. Shapiro and over a sustained period — is the antithesis of the conduct that brought him before the Court. It reflects internalized deterrence, not mere compliance with supervision.

### C.      Protection of the Public — 18 U.S.C. § 3553(a)(2)(C).

Mr. Shapiro presents no risk to the community. The opinion of the FBI Special Agent who investigated him is unequivocal on this point. *See* Ex. A. Mr. Shapiro has surrounded himself with a stable, supportive, and law-abiding network of family and friends. His conduct throughout his period of supervision has been consistent, measured, and entirely lawful.

### D.      Educational, Vocational, Medical, and Rehabilitative Needs — 18 U.S.C. § 3553(a)(2)(D).

Supervised release is not punitive in design; its statutory purpose is to assist a defendant's transition back into the community. *See* U.S.S.G. § 5D1.1, cmt. background (2024); *Johnson v. United States*, 529 U.S. 694, 708–09 (2000). The rehabilitative work of supervision has been completed in this case. Mr. Shapiro engaged in sustained spiritual and personal growth during his incarceration, and his post-release conduct — daily caregiving for an ailing parent, consistent religious observance, voluntary educational outreach, and lawful gainful employment —

demonstrates a defendant who has successfully reintegrated. Continued formal supervision serves no remaining rehabilitative function.

**E.      Restitution — 18 U.S.C. § 3553(a)(7).**

Mr. Shapiro was ordered to pay restitution in the amount of $82,657,362.29. Since his release on June 11, 2020, he has made every required monthly restitution payment without interruption or lapse, in full compliance with the terms of his supervision. This sustained, uninterrupted payment history demonstrates ongoing financial accountability and a sincere commitment to satisfying his obligations to victims. The Court should also be aware that the Chapter 7 Trustee in the related bankruptcy proceeding recovered approximately $45,000,000 for distribution to creditors, and a forfeiture order in the approximate amount of $38,000,000 was entered at sentencing — both of which were facilitated by Mr. Shapiro's early and continuing cooperation. Termination of supervised release will not impair Mr. Shapiro's restitution obligation, which is an independent judgment payable to the United States Treasury and enforceable by the United States.

**F.      Applicable Sentencing Range, Pertinent Policy Statements, and Need to Avoid Disparities — 18 U.S.C. § 3553(a)(4), (a)(5), (a)(6).**

The applicable advisory policy statement, U.S.S.G. § 5D1.1, expressly emphasizes "the rehabilitative ends of supervised release" and the need for individualized assessment. Termination here would not produce disparity; rather, it would conform Mr. Shapiro's status to that of similarly situated defendants who have exhibited durable rehabilitation, full compliance, and consistent restitution. *See, e.g., United States v. Post*, No. 15-cr-80055 (S.D. Fla. July 2, 2025) (granting early termination on similar showing of rehabilitation, deterrence, and stable community ties).

**G.** **Employment and Practical Burden of Continued Supervision.**

A district court may also consider a defendant's employment history and economic circumstances. *See United States v. Perry*, 397 F. App'x 521, 522 (11th Cir. 2010). Mr. Shapiro has been employed continuously with Beyond Media Group since September 2025 in an Administrative Assistant role that requires regular travel both within and outside the State of Florida. The travel-related conditions of supervision frequently impede the timely performance of his duties. Termination would remove a meaningful operational impediment to his continued lawful employment and economic self-sufficiency, both of which the Sentencing Commission has identified as protective factors against recidivism.

**H.** **The Interest of Justice.**

Continued supervision serves no remaining rehabilitative or protective function in light of the record before the Court. The interest of justice is best served by permitting Mr. Shapiro to move forward as a fully reintegrated member of the community — free to continue his employment, his caregiving responsibilities, his religious observance, and his voluntary educational advocacy without the residual administrative burden of ongoing supervision.

## IV.   CONCLUSION

**WHEREFORE**, for the foregoing reasons, Defendant Nevin Shapiro respectfully requests that this Honorable Court enter the proposed Order submitted herewith terminating the remaining term of his supervised release pursuant to 18 U.S.C. § 3583(e)(1).

Dated: May 5, 2026

Respectfully submitted,

/s/ Reganel J. Reeves
Reganel J. Reeves, Esquire
Florida Bar No. 76257
Esquire Litigation Group
6278 Dupont Station Court East, Unit 2
Jacksonville, Florida 32217
Telephone: (904) 290-3476, ext. 1
Email: rreeves@esquirelitgroup.com
Local Counsel for Defendant Nevin Shapiro