**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO.  25-tp-80032-EA**

**UNITED STATES OF AMERICA,**

      **Plaintiff,**

**v.**

**NEVIN SHAPIRO,**

      **Defendant.**

_____/

**GOVERNMENT'S RESPONSE TO**
**DEFENDANT'S MOTION FOR EARLY TERMINATION**
**OF SUPERVISED RELEASE**

The United States of America (hereinafter "the Government"), by and through the undersigned Assistant United States Attorney, hereby files its Response to Defendant's Motion for Early Termination of Supervised Release (DE 8).  In his Motion, Shapiro requests termination based on his compliance with the terms and conditions of his supervision and his rehabilitative accomplishments. Shapiro also cites the need to care for his ailing father as a reason to terminate his supervision early. To date, he has completed 17 of his 36 months of supervision.  Although his efforts to deter others from following his criminal example is commendable, he has failed to demonstrate anything exceptional or extraordinary to warrant early termination.  Moreover, the sentencing factors set forth in Title 18, United States Code, Section 3553(a) weigh against early termination.  Undersigned counsel has spoken to Shapiro's supervising probation officer, Officer Grice, who confirmed that Shapiro still owes over $82 million in restitution.  Accordingly, the Government respectfully requests that the instant motion be denied.

## BACKGROUND

**The Offense Conduct**

On September 15, 2010, Shapiro pleaded guilty to Counts 2 and 5 of the Indictment, which charged him with Securities Fraud in violation of Title 15, U.S.C. §78j(b), 78ff(a) and Title 17 U.S.C. §240-10b-5, and Transacting in Criminal Proceeds in violation of Title 18 U.S.C. §1957.   See Judgment.  As part of his plea, Shapiro admitted that he was part of a multi-year investment fraud in which he induced potential investors to fund his company- Capitol Investment USA, Inc.- which was purportedly a wholesale grocery distribution business.  PSI ¶ 12.  Shapiro and others under his direction provided investors with promissory notes, joint venture agreements or other evidence of indebtedness which reflected the amount of their investment in Capitol and a schedule for the payment of interest and the return of principal. PSI ¶ 20. Shapiro and Capitol promised interest rates of return ranging from 10 percent to 26 percent on an annualized basis.  Id.

In reality, Capitol had virtually no active wholesale grocery business during the time period relevant to the Indictment. PSI ¶ 22.  Capitol had virtually no business sales and a vast majority of the money that came into Capitol was through the solicitation of investor money- a classic Ponzi scam. Id.  Shapiro raised more than $930,000,000 from investors throughout the United States.  PSI ¶ 21. The proceeds of the fraud were sued to make lulling payments to investors, to funds Shapiro's lavish lifestyle and to make commission and override payments.  PSU ¶ 24.  Shapiro siphoned at least $38,000,000 of investor funds to funds his lavish lifestyle.  PSI ¶ 27.

Of the $930,824.665.10 in principal collected from investors, principal payments of $803,487,077.16 was paid back to investors.  An additional $53,505,705.62in interest payments was also made.  Approximately 62 victims suffered losses totaling $82,657,362.29.  PSI ¶ 54.  This is the amount of restitution reflected in the judgment entered by the Hon. Susan D. Wigenton as part of Shapiro's sentence.

**Relevant Procedural History**

On or about July 14, 2010, Shapiro was charged via Indictment with six counts of Conspiracy, Securities Fraud, Wire Fraud and Money Laundering. On September 15, 2010, Shapiro pleaded guilty to Counts 2 and 5 of the Indictment, which charged him with Securities Fraud in violation of Title 15, U.S.C. §78j(b), 78ff(a) and Title 17 U.S.C.  §240-10b-5, and Transacting in Criminal Proceeds in violation of Title 18 U.S.C. §1957.

On June 7, 2011, the Hon. Susan D. Wigenton of the District Court of New Jersey, sentenced Defendant to a term of imprisonment of 240 months, to be followed by a supervised release term of three (3) years. DE 20.

According to the Department of Probation, Defendant has been on supervised release since December 20, 2024.  His period of supervision is set to end on December 19, 2027.

**The Instant Motion**

On or about May 6, 2026, Shapiro filed a motion for early termination of his supervised release term. DE 8.  To date, he has served 17 months of supervision-  just less than half of the term of supervision. In addition to citing his compliance with the terms of supervised release, Shapiro also notes his desire terminate supervise release to care for his ailing father and to travel for work related purposes.  For the reasons set forth below, his motion should be denied. Although Probation confirms that Shapiro has had no violations of supervision while on supervised release, Shapiro has not satisfied his restitution order. Shapiro has also not shown that continued supervision would impair his ability to work, as the current probation officer has approved work related travel requests, and there have been no denials brought to the attention of the court via a Motion to Travel.

## ARGUMENT

### A. Legal Standard

The purpose of supervised release "is to improve the odds of a successful transition from

the prison to liberty." *Johnson v. United States*, 529 U.S. 694, 708–9 (2000) (citation omitted). A district court may terminate a term of supervised release after the completion of one year of the term if, after considering specified factors set forth in Title 18, United States Code, Section 3553(a) ("Section 3553(a)"), the court determines such action is both warranted by Shapiro's conduct and is in the interests of justice. *See* 18 U.S.C. § 3583(e)(1). With respect to modification, a district court may, after considering certain enumerated Section 3553(a) factors, "modify, reduce, or enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation and the provisions applicable to the initial setting of the terms and conditions of post-release supervision." 18 U.S.C. § 3583(e)(2).

By requiring courts to consider certain Section 3553(a) factors, Congress has indicated that Shapiro's history and characteristics, the nature of the offense, deterrence, public protection, training and education, the applicable guideline range for the offense, and avoidance of unwarranted sentence disparities among similarly situated defendants are all relevant to a court's determination whether to terminate or modify a term of supervised release. *See United States v. McClamma*, 548 F. App'x 598, 599 (11th Cir. 2013) (citing 18 U.S.C. § 3583(e)(1)).

**B. Early Termination of Supervised Release**

Because Shapiro has completed more than one year of supervision, the question before the Court is whether early termination is both warranted by his conduct and is in the interest of justice. *See* 18 U.S.C. § 3583(e)(1). It is neither.

Early termination is only occasionally justified, as Section 3583 does not provide for early termination based solely on a defendant's compliance with the terms of his supervision. "Simple compliance with the conditions of supervised release [is] expected and not exceptional . . . ." *Laine*, 404 F. App'x 571, 574 (3rd Cir. 2010). Rather, early termination of supervised release

should occur only when a defendant establishes "something exceptional or extraordinary warrants it." *United States v. Laine*, 404 F. App'x at 573–74 (citation omitted); *see also United States v. Reisner*, No. 4:06-CR-077-SPM, 2008 WL 3896010, at *1 (N.D. Fl. Aug. 20, 2008) (denying motion for early termination in view of defendant's failure to "demonstrate exceptionally good behavior or other extraordinary circumstances sufficient to warrant early termination"); *United States v. West*, No. 5:00-CR-23(HL), 2011 WL 1458723, at *1 (M.D. Ga. Apr. 15, 2011) ("However, while [defendant's] conduct is certainly laudable, it is not exceptional to the extent that it warrants terminating the remainder of his supervised release.  After all, being a productive member of society and exhibiting good behavior is what is expected of every individual, especially those who have been convicted of a criminal offense and are currently serving a term of supervised release."); *United States v. Medina*, 17 F. Supp. 2d 245, 247 (S.D.N.Y. 1998) ("While [defendant's] ... post-incarceration conduct is apparently unblemished, this alone cannot be sufficient reason to terminate the supervised release since, if it were, the exception would swallow the rule."); *United States v. Wesley*, 311 F. Supp. 3d 77 (D.C. 2018) ("[D]istrict courts applying *Lussier*, [104 F.3d 32, 36 (2d Cir. 1997)] to § 3583(e)(1) petitions have found that even perfect compliance with conditions of release does not qualify as 'exceptionally good behavior' warranting early termination [and] [t]hese courts have noted that '[m]odel prison conduct and full compliance with the terms of supervised release is what is expected of a person under the magnifying glass of supervised release and does not warrant early termination', citing *United States v. Etheridge*, 999 F.Supp.2d 192, 197 (D.D.C. 2013) (quoting *United States v. McKay,* 352 F.Supp.2d 359, 361 (E.D.N.Y. 2005)).

### C.   Sentencing Factors

Here, Shapiro has refrained from violating the law and has complied with the terms of his supervision.  He even states that he has occasionally spoken with business school students to warn

them of the perils of losing "their moral compass." Although commendable, these accomplishments do not outweigh the Section 3553 Sentencing Factors that weigh heavily against early termination of supervision.

First, Shapiro's post-incarceration conduct has been law-abiding, but it has not been exceptional to the extent that it warrants early termination of his supervision. There is no evidence of him "exceeding all of the court's requirements." In fact, Shapiro had paid a mere $9,977.15, towards the restitution amount of $82,657,362.29.

Second, the strong need for specific and general deterrence, and the need to protect the public all weigh heavily against early termination. *See* 18 U.S.C. § 3553(a)(2)(B)-(C). Shapiro's criminal conduct demands a sentence that deters him and others from similar conduct. A reduction in the term of his supervised release would not adequately deter criminal conduct. A three-year term of supervised release is still warranted to deter criminal conduct and protect the public. *See Smith*, 2023 WL 2991200 at *3; *See also United States v. Cadavid*, No.: 8:17-cr-267-VMC-MAP, 2022 WL 1805148 (M.D. Fl. June 1, 2022) (court denies request for early termination of supervised release and held that defendant is required to fulfill entire 5-year term of supervised release despite 14 months remaining after conviction of fraud charges resulting in nearly $1 million worth of losses. Court cites need to deter future criminal conduct and to protect the public).

Next, the need to provide restitution to any victims of the offense weigh against early termination. *See* § 3553(a)(7). Shapiro still owes over $82 million in restitution for which he is legally required to repay. Shapiro has not given this Court any reason to believe that he will continue making timely and full payments once he is free from supervision. *See United States v. Boyle*, No. 16-271, 2023 WL 2601176 at *2 (E.D. Pa. Mar. 22, 2023) (court finds that, due to defendant's history including $300,000 in unpaid restitution on fraud charges, it is necessary for

him to complete his supervised release to insure that he has been rehabilitated and can become fully integrated into the community); *United States v. Clough*, No. 1:20-cr-105-BLW, 2022 WL 6731362 at *1 (D. Id. Oct. 11, 2022) (court finds that given $762,621.88 in restitution outstanding on wire fraud charges, "the need to provide restitution to any victims of the offense" weighs against early termination); *United States v. Davis*, No. 05-cr-744-JGC, 2021 WL 5769186 at *3 (N.D. Oh. Aug. 31, 2021) (court denied early termination of supervised release for defendant convicted of Ponzi scheme and ordered to pay $18.5 million in restitution with more than $13 million still owed).  Although this Court was not the sentencing court, as this case was prosecuted in the District of New Jersey, the Government asks this Court to specifically note the Victim Impact Section of the PSI, in paragraphs 70-73.  Among the 62 victims in this case, many lost their life savings due to Shapiro's criminal conduct.  They lost homes.  They lost retirement savings and were thus robbed of a secure futures.  They lost savings that were meant to pay for children's college costs. To relieve Shapiro of his obligation to pay restitution as a condition of his supervised release, as meager as it is compared to the amount of loss he caused, would send the wrong signal to the victims and the public. Financial crimes have consequences.  Just because a defendant finds the consequences inconvenient does not mean they should be set aside before the full sentence is completed.

There is also no reason Shapiro cannot continue to care for his ailing father and travel for work while on supervised release.  While he must receive permission to travel from probation, Shapiro may also petition the Court to travel.  There has been no instance cited where Shapiro's work was impeded due to a denial of a timely request to travel.

In short, Shapiro has been law-abiding while on supervision.  However, in light of the serious nature of his crime, the need to deter criminal conduct, and the extremely high amount of

restitution still owed, the interests of justice are best served by Shapiro completing the remaining term of supervised release.  Shapiro has not articulated any specific hardship posed by his current conditions of supervision. Accordingly, termination of supervision is not warranted.

## CONCLUSION

Based on the foregoing, the Government opposes Shapiro's motion for early termination of supervised release.  **WHEREFORE**, the Government objects to Defendant' Motion for Early Termination of Supervised Release and respectfully asks this Court to **DENY** Defendant's Motion for the reasons stated herein.

Respectfully submitted,

JASON A. REDING QUIÑONES
UNITED STATES ATTORNEY

By: *s/*  Aurora Fagan
AURORA FAGAN
Assistant United States Attorney
500 S. Australian Ave., Suite 400
West Palm Beach, FL 33401
Telephone: (561) 820-8711
Florida Bar No. 188591

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was electronically filed with the court and defense counsel using the CM/ECF system on this 22nd day of May, 2026.

 s/ *Aurora Fagan*
Aurora Fagan
Assistant United States Attorney